No. 33,422

J. A. Fleming, *Appellant*, v. Frank L. Campbell (*Appellee*),
Charles W. German, Charles Z. German and F. W. Beck
(*Defendants*).

(69 P. 2d 718)

Opinion filed July 10, 1937.

*Reginald H. Glandon,* of Kansas City, for the appellant.

*T. M. Lillard, Ralph F. Glenn,* both of Topeka, and *Steadman Ball,* of Atchison, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action for damages. The second and last amended petition contained two alleged causes of action. Plaintiff has appealed from rulings striking certain portions of his first cause of action, from a ruling permitting defendant Campbell to file certain motions, and a demurrer after time had been allowed permitting him to plead, and from an order sustaining a demurrer to his second cause of action.

The first cause of action was for the recovery of damages in the sum of $19,400, and was predicated on the alleged breach of a

written contract to purchase certain shares of corporate stock from plaintiff. The second cause of action was for the recovery of damages in the same amount, but was based on alleged fraud in the procurement of the contract. The parties to the contract were the plaintiff and Legal Indemnity Underwriters, Ltd., a corporation. The action, however, was not brought against the corporation but against four defendants in their individual capacity, on the theory they were the undisclosed principals. Service was had on only one of the defendants, Frank L. Campbell.

We shall first consider the ruling under which certain portions of the first cause of action were stricken. Plaintiff's first complaint in this regard is the court struck certain allegations on its own motion. The record before us discloses the trial judge made a specific finding to the contrary. He at first denied the motion to strike those allegations in a former petition, but upon further deliberation concluded they should have been stricken. He struck those allegations under a general motion to strike the last amended petition and under a demurrer thereto when those allegations were again incorporated in the last amended petition. Those allegations involved an item of $15,400, and required a construction of the contract, which contract was made a part of the first cause of action. The construction of a written contract presents a question of law for the determination of the court with which the jury has no concern. (*Hudson v. Riley,* 104 Kan. 534, 180 Pac. 198; *Sipes v. Pessemier,* 144 Kan. 300, 58 P. 2d 1085.) Having come to the conclusion all reference to the $15,400 item should be stricken, it was the court's duty to reverse its former ruling. Under these circumstances it cannot be said the court made the ruling on its own motion.

The real question on the ruling to strike is, Was the ruling proper? This requires a review of the contract and a consideration of the materiality of the allegations stricken. The contract reads:

"This contract, made and entered into this 9th day of April, 1935, by and between J. A. Fleming, of Kansas City, Mo., party of the first part, and Legal Indemnity Underwriters, Ltd., a corporation, party of the second part, witnesseth:

(1) "That whereas party of the first part owns fifty-one hundred (5,100) shares of the common stock of Bankers Mortgage Company of Topeka, Kan., a corporation, and desires to sell said stock at a price of four dollars ($4) per share, and party of the second part desires to purchase said stock at a price of four dollars ($4) per share;

"Now, therefore, in consideration of one thousand dollars ($1,000), the receipt of which is hereby acknowledged, party of the first part hereby agrees

to, and does hereby, sell to party of the second part fifty-one hundred (5,100) shares of common stock of the Bankers Mortgage Company of Topeka, Kan., for a total consideration of twenty thousand four hundred dollars ($20,400), to be paid as follows: One thousand dollars ($1,000) upon the signing of this contract and delivery of the stock; four thousand dollars ($4,000) on or before the 9th day of July, 1935, the balance of fifteen thousand four hundred dollars ($15,400) on or before the 9th day of October, 1935.

'. (2) "It is further agreed and understood by and between the parties hereto that party of the second part will execute its notes, one in the amount of four thousand dollars ($4,000) due on or before July 9, 1935, and one for fifteen thousand four hundred dollars ($15,400) due on or before October 9, 1935, and deliver the same, together with certificate for forty-six hundred (4,600) shares of the common stock of the Bankers Mortgage Company of Topeka, Kan., to C. W. German, escrow agent, to be held by him to secure the payment of the said notes by party of the second part and the fulfillment of this agreement.

(3) "It is further agreed and understood by and between the parties hereto that the remaining five hundred (500) shares of stock owned by party of the first part and necessary to make the total of fifty-one hundred (5,100) shares is represented by a certificate for fifty (50) shares of the original stock of the Bankers Mortgage Company of Topeka, Kan., which is equal to two thousand (2,000) shares of the present stock of said Bankers Mortgage Company of Topeka, Kan., and that said stock is not in the possession of the party of the first part, but that the title thereto has been fixed in party of the first part by judgment of the United States district court for Kansas. And it is specifically agreed between the parties hereto that if the said five hundred (500) shares of stock of the Bankers Mortgage Company of Topeka, Kan., cannot be obtained by party of the second part, through no fault of its own, that the note for fifteen thousand four hundred dollars ($15,400), due October 9, 1935, will be reduced by two thousand dollars ($2,000), making a total then due of thirteen thousand four hundred dollars ($13,400).

(4) "It is further agreed and understood that party of the first part shall execute an assignment for the five hundred (500) shares above referred to in favor of the party of the second part, which assignment shall be deposited by party of the second part with the escrow agent.

(5) "It is further agreed and understood by and between the parties hereto that C. W. German, of Kansas City, Mo., shall act as escrow agent for the parties hereto, and that he shall acknowledge receipt to party of the first part of the certificate for forty-six hundred (4,600) shares of common stock of the Bankers Mortgage Company of Topeka, Kan., and the assignment to party of the second part of five hundred (500) shares of common stock of the Bankers Mortgage Company of Topeka, Kan., together with two notes of the party of the second part, one in the amount of four thousand dollars ($4,000), due July 9, 1935, and one for fifteen thousand four hundred dollars ($15,400), due October 9, 1935. And it is specifically understood and agreed between the parties hereto that if both of said notes are paid on or before the dates due, the escrow agent shall deliver the certificate for forty-

six hundred (4,600) shares of the common stock of the Bankers Mortgage Company of Topeka, Kan., together with the assignment for five hundred (500) shares of stock in said company, to party of the second part; or in the event that said party of the first part shall not be able to deliver the certificate for said five hundred (500) shares, said assignment shall be returned to him when the obligations of the second part as they will then stand have been met.

(6) *"It is further agreed and understood by and between the parties hereto that if default is made in the payment of the note for four thousand dollars ($4,000), due July 9, 1935, then and in that event that note shall be delivered to party of the first part and the note for fifteen thousand four hundred dollars ($15,400) due October 9, 1935, shall be delivered to party of the second part.* If the said note for four thousand dollars ($4,000) due July 9, 1935, is paid as agreed and default is made in the payment of the note for fifteen thousand four hundred dollars ($15,400) due October 9, 1935, then the assignment above referred to shall be delivered to party of the first part and the certificate for forty-six hundred (4,600) shares of the stock of the Bankers Mortgage Company of Topeka, Kan., shall be sent to the company by the escrow agent to be divided into two certificates, one in the amount of one thousand (1,000) shares to party of the second part or its assigns, and one for thirty-six hundred (3,600) shares to party of the first part or his assigns, and the respective certificates delivered to the respective parties; and the said note for fifteen thousand four hundred dollars ($15,400) shall be delivered to party of the second part and there shall be no further obligation on the part of the party of the second part thereon, but all payments made by it to said party of the first part on the transaction covered by this contract shall be taken and received by said first party as liquidated damages.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written. [Italics inserted.]

J. A. FLEMING,
(Corporate Seal)    LEGAL INDEMNITY UNDERWRITERS, LTD.,
By F. W. BECK, *President,*
*Party of the Second Part."*

The ruling striking all reference to the item of $15,400 was proper under the express provisions of the italicized portion of paragraph six of the contract, in view of the fact the first cause of action disclosed default had been made in the payment of the $4,000 note. The ruling was manifestly correct, irrespective of whether the plaintiff was suing the four individuals as undisclosed principals or the corporation as the contracting party.

Other allegations stricken from the first cause of action, and from which ruling an appeal was taken, pertain to the alleged fraud on which the second cause of action was based. That those allegations pertained to fraud is admitted in plaintiff's brief. They were properly stricken from the first cause of action, which was an action

for damages on the ground of alleged breach of contract. A cause of action must be drawn on a definite theory. (*Turner v. Jarboe,* 145 Kan. 202, 64 P. 2d 26.) The allegations, if deemed necessary by plaintiff, should have been made in the second cause of action.

It is next contended the trial court erred in permitting the defendant Campbell to file certain motions and a demurrer after having been allowed twenty days within which to plead. It is urged a motion or demurrer is not a pleading. (G. S. 1935, 60-701, 60-703.) Assuming that, strictly speaking, they are not, they were filed with the permission of the court. The filing of the motions and the demurrer rested in the sound discretion of the trial court. (G. S. 1935, 60-727; *Sheldon v. Board of Education,* 134 Kan. 135, 4 P. 2d 430.) Defendant had filed a motion asking that plaintiff be required to elect on which cause of action he would rely. That motion was overruled. Defendant also filed motions to strike, to make definite and certain and to separately state and number. These were all overruled except as to a portion of the motion to strike. The rulings on these motions rest in the sound discretion of the trial court. (*Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469.) Ordinarily an appeal does not lie from rulings resting in the discretion of the trial court. (*Nelson v. Schippel,* supra.) Moreover, no abuse of discretion is shown and no prejudice affirmatively appears to have resulted from the permission to file the motions nor from the rulings thereon.

This brings us to a consideration of the ruling on the demurrer to plaintiff's second cause of action. The demurrer was sustained on the ground it did not state facts sufficient to constitute a cause of action. Was the ruling sound? This cause of action as previously stated was grounded on the alleged fraud of the four individual defendants as undisclosed principals. This theory simply means the corporation which signed the contract was in reality not the contracting party but that the four defendants were. The contract was signed only by plaintiff and the corporation. We shall, however, pursue plaintiff's theory that defendants were the undisclosed principals and that the contract was procured through their fraud.

The misrepresentations complained of were, (1) that the corporation had legal capacity to contract when in fact its charter had been recently revoked in the state of Nevada and the corporation had not been reinstated to transact business, and (2) that it had a certain financial status, both of which representations, it was alleged, were

untrue. The petition then proceeded to allege the other elements of fraud and concluded with the statement that plaintiff was thereby damaged in the sum of $19,400. Assuming, without deciding, that these two representations or either of them were actionable as fraudulent statements, what damage did the second cause of action allege? Fraud, to be remedial must, of course, result in injury. In *Bailey v. Oatis,* 85 Kan. 339, 116 Pac. 830, it was held:

"Fraud without injury is not actionable; in order to sustain an action for false representations the party complaining must prove that he has sustained damages thereby." (Syl. ¶ 1.)

In 26 C. J. (Fraud, § 77) the rule is stated thus:

"Fraud without damage or injury is not remediable. This principle applies not only to fraud arising through representation but also to fraud arising through concealment, or a combination of concealment and representation. Falsehood which causes no injury may be a moral but cannot be a legal wrong." (p. 1167.)

In the second cause of action it was alleged plaintiff had received only $1,000 at the time of executing the contract. It further alleged:

"That if said representations had been true, this plaintiff would have received on account of sale of the stock evidenced by the contract hereinbefore referred to, twenty thousand four hundred ($20,400) dollars, as called for by the said contract."

The allegation of damage was a pure conclusion. Furthermore, it was contrary to the very contract which plaintiff pleaded. Assuming representations concerning the corporation's capacity to contract and as to its financial status had been entirely true, it would not have been obliged to pay the note of $15,400. Plaintiff expressly agreed if default was made in payment of the $4,000 note, then that note should be delivered to him and the $15,400 note should be delivered to the corporation. (See italicized portion of contract, par. 6.) Pursuing plaintiff's theory that defendants were the undisclosed principals, it follows they would have been entitled to a return of the $15,400 note and plaintiff would have been entitled to a delivery of the $4,000 note. It thus appears $4,000 was the limit of the liability to plaintiff as fixed by the contract. From the allegations contained in the second cause of action, it does not appear that plaintiff has been damaged as to the $4,000 item. That item remains to be litigated in the first cause of action. Concerning the proper conclusion of that litigation we express no view. That question is not before us now. It is apparent no damage of $4,000

or of any other amount has yet been shown. For the purpose of the present appeal, it is sufficient to say the demurrer was properly sustained for the reason no present damage or injury was stated.

It follows the rulings of the trial court must be sustained. It is so ordered.